## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**ACCUSOFT CORPORATION,**
a Florida corporation,

                    **Plaintiff,**

**v.**                                             Civil Action No. 4:12-cv-40007-TSH

**QUEST DIAGNOSTICS, INC.,** a
Delaware corporation, and **MEDPLUS,**
**INC.,** an Ohio corporation,

                    **Defendants.**
_____/

## ACCUSOFT CORPORATION'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AND DAMAGES UNDER THE COPYRIGHT ACT

COMES NOW, the Plaintiff, ACCUSOFT CORPORATION ("Accusoft" or "Plaintiff"), and hereby files its Memorandum in Opposition to Defendants' Motions for Summary Judgment as to Liability and Damages under the Copyright Act (Dkt. 412, hereinafter "Defendants' Motion"). Pursuant to Local Rule 56.1, Plaintiff has submitted simultaneously herewith its Responses in Opposition to Plaintiff's Statement of Facts (hereinafter "SOF Resp."). Specifically, Plaintiff opposes Defendants' Motion on all grounds as more fully set forth below:

### I.    SUMMARY OF THE ARGUMENT

Defendants' Motion should be denied. They mischaracterize the law and the record of this case. Defendants directly challenge the validity of Accusoft's copyrights despite a valid contractual waiver preventing them from doing so. Even assuming they could challenge Accusoft's copyrights, their argument is without merit as they have shown no evidence of fraud or misrepresentation by Accusoft to the U.S. Copyright Office and Accusoft has otherwise proven the necessary elements of a valid copyright.

Defendants' claim of a license to distribute OptiMaxx is likewise off the mark. Defendants do not recite all the relevant facts pertaining to the parties' relationship. Next, the Defendants ignore the clear intent and misread the 2008 purchase of Accusoft Delaware by PIC Acquisition II, Inc. in an attempt to prove that Accusoft did not acquire pre-2008 causes of action for copyright infringement from Accusoft Delaware. They also incorrectly interpret the statute of limitations for copyright claims, simply claim that they will challenge Accusoft's damages expert on *Daubert* grounds without any justifiable request for relief at this stage, and incorrectly argue that Accusoft is not entitled to statutory damages or attorney's fees. Defendants' Motion should be denied in its entirety.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the facts in the light most favorable to the non-moving party. *N.Y. State Dairy Foods, Inc. v. N.E. Dairy Compact Comm'n,* 198 F.3d 1, 3 (1st Cir.1999), *cert. denied,* 529 U.S. 1098 (2000).

Defendants' Motion asserts six grounds in support of their requested relief. As demonstrated below and in the Response to Defendants' Statement of Facts, there are numerous issues of law and material fact which preclude entry of summary judgment for Defendants.

## III.   ARGUMENT

### A.   Copyright Protection for Computer Software.

"[A] computer program, whether in object code or source code, is a 'literary work' and is protected from unauthorized copying, whether from its object or source code version." *Data General Corp. v. Grumman Systems Support Corp.*, 803 F. Supp. 487, 490 (D. Mass. 1992)

(citing *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1249 (3rd Cir.1983)). The software program, not only the source code version, is the protected work. *Id.* (citing *Midway Mfg. v. Artic Int'l., Inc.,* 211 U.S.P.Q. 1152, 1158 (N.D.Ill.1981). As the *Data General* court noted, the U.S. Copyright Office holds the same view. "The Copyright Office considers source code and object code as two representations of the same computer program. For registration purposes, the claim is in the *computer program* rather than in any particular representation of the program." *Data Gen. Corp.*, 803 F. Supp. at 490.

**B.    Plaintiff has established the elements of a prima facie case for copyright infringement, shifting the burden to the Defendants to provide defenses.**

Defendants mischaracterize both the law concerning software copyrights and the record of this case. The elements of a cause of action for infringement of a copyright for computer software are twofold: "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Latin Am. Music Co. Inc. v. Media Power Group, Inc.,* 705 F.3d 34, 38 (1st Cir. 2013) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 111 S. Ct. 1282, 113 L.Ed.2d 358 (1991)). Accusoft has proven both elements.

Accusoft satisfied the first element by producing valid certificates of copyright for ImageGear. (Dkts. 182, 182-4). "A certificate of copyright constitutes prima facie evidence of ownership and originality of the work as a whole." *Johnson v. Gordon,* 409 F.3d 12, 17 (1st Cir. 2005). "Upon the plaintiff's production of such a certificate, the burden shifts to the defendant to demonstrate some infirmity in the claimed copyright." *Id.* Defendants contest Accusoft's copyrights despite Section 5.2 of the 2001 ImageGear License Agreement that provides that Accusoft's copyrights in ImageGear may not be contested. (Dkts. 182-1, p. 4; 182-2, p. 8; 182-3, p. 12); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191 (7th Cir. 1987) (finding a no-contest clause in copyright licensing agreement is enforceable). Nevertheless,

ImageGear is owned by Accusoft and is original. (Dkts. 28-1 and 53). The former (ownership) is addressed below, and the latter (originality)[1] is never questioned by Defendants' Motion.

**C.      Plaintiff is not required to compare the source code with the deposit copies because this case does not concern source code, nor to prove substantial similarity because Defendants have admitted to copying ImageGear in its entirety.**

The second copyright infringement element is satisfied by evidence of direct copying by the defendant. *Data Gen. Corp.*, 803 F. Supp. at 491. Where a defendant has admitted to directly copying a software program, it is not necessary to conduct an examination of the source or object code to confirm substantial similarity. *Id.* ("[A] detailed code examination [is] not applicable to the case before this court. Grumman has admitted to taking copies of ADEX and reproducing and using them without modification.").

If the parties agree that Defendants "copied all aspects of the [computer program]," then there is no need for debate of substantial similarity. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 537 (6th Cir. 2004). A substantial similarity analysis is not required because "if an entire program is thus copied, certainly the 'protectible elements' of the program are also copied." *Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96, 100 (D.C. Cir. 1998) (*citing Fonar Corp. v. Domenick*, 105 F.3d 99, 106 (2d Cir. 1997) (summary judgment for defendants inappropriate assuming they made "complete copies" of plaintiff's software). *See also Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995) (where defendant's conduct "involved copying entire programs, there is no doubt that protected elements of the software were copied.); *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d 1284, 1299 (S.D. Fla. 2012) (holding that "[i]n the context of computer

---

[1] "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 60 (1st Cir. 2009) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 362 (1991)). "The requisite level of creativity is extremely low; even a slight amount will suffice." *Id.*

software" when "the defendant has engaged in literal or verbatim copying of all of the protected" computer program, "there is sufficient evidence to authorize a finding of infringement."); *TracFone Wireless, Inc. v. Technopark Co., Ltd.*, 281 F.R.D. 683, 688 (S.D. Fla. 2012) (same).

Defendants have admitted that multiple versions of Accusoft's copyrighted ImageGear software were incorporated into their software in its entirety. (Dkt. 304, SOF, ¶¶ 33-37, 43, 72, 75; Dkt. 189, Second and Third Affirmative Defenses; Counterclaim, ¶¶ 3 and 10.) In fact, that is precisely the intent of a software development toolkit ("SDK"). (Dkt. 37-6, ¶¶ 5-8 and Dkt. 53). Accusoft develops particular functionality available via an SDK so properly license clients do not have to spend development resources. *Id*. The Accusoft client simply inserts Accusoft's files, wholesale, into their product. *Id*. There is no issue of fact as to whether or not Defendants copied ImageGear; the Court has previously recognized the same. (Dkts. 53 at pp. 4-5, 151 at pp.15 and Dkt. 297). Moreover, Defendants do not dispute, and thus concede, that ImageGear is original and copyrightable. *Id*. Therefore, a substantial similarity analysis is not required because the Defendants have admitted to copying the entirety of ImageGear.

Defendants attempt to extrapolate several false hurdles for a plaintiff to state a case for copyright infringement by rely repeatedly on *Airframe Sys., Inc. v. L-3 Communications Corp.*, 658 F.3d 100 (1st Cir. 2011). The facts in *Airframe* are markedly different than the facts of this case. There, the Plaintiff, Airframe, accused L-3 Communications of copying Airframe's ARMS software source code, to which L-3 had access, so that L-3 could create a replacement software program, M3. *Airframe*, 658 F.3d at 103. Here, Accusoft does not allege that Defendants had access to or copied ImageGear source code. (SOF, ¶¶ 109-110.) Defendants admit that they did not have access to ImageGear source code. *Id*. Nor does Accusoft allege that Defendants built a competing or replacement product based on Accusoft's ImageGear source code. Further, in

*Airframe*, the Defendant, L-3, denied making a copy or use of Airframe's ARMS software source code to create the M3 product. *Airframe*, 658 F.3d at 104.  Here, Defendants have admitted to making copies of ImageGear object code and incorporating the code in its entirety into Defendants' programs. (SOF, ¶¶ 33-35, 37-38, 44, and 72; Dkt. 304.)  Thus, the central question from *Airframe* is not in dispute in this case.

In *Airframe*, the allegation was copying of source code to source code; yet, Airframe only produced and compared source code that Airframe admitted was not registered.  *Airframe*, 658 F.3d at 104.  Additionally, Airframe admittedly never produced any source code for any of its copyrighted versions of Airframe's ARMS software.  *Id.*  L-3 successfully argued that the single declaration comparing the source codes was insufficient because the designer compared M3 to the unregistered 2009 ARMS source code and that this comparison was "insufficient to establish the content of the prior source code versions *covered by* Airframe's copyright registrations."  *Id.* In contrast, the instant case concerns copying object code to object code, (SOF Resp., ¶ 110; see *also* Dkt. 182-1, §§ 1.5, 1.9, 2.2, and Art. 11.)  Under such circumstances where the plaintiff has established a valid copyright, proving the content of the source code is not necessary.  *Data General Corp. v. Grumman Systems Support Corp.*, 825 F. Supp. 340, 355-356 (D. Mass 1993). Accusoft has produced the ImageGear source code for all versions of ImageGear that Defendants have admitted were copied, incorporated or distributed with ChartMaxx, OptiMaxx, and eMaxx. (SOF Resp., ¶ 4; Lubeck Decl., at ¶ 9.)  The ImageGear source code correlates with the versions of ImageGear registered and copied by Defendants. (Lubeck Decl., at ¶¶ 8-11.)  The facts in the two cases are not similar.

1.   **Plaintiff is not required to prove the contents of its copyright registrations and did not "stymie" any effort by Defendants to conduct discovery.**

    a.   No proof of the source code registration content is necessary.

Having produced valid copyright registrations for its ImageGear software, Plaintiff has established prima facie evidence of ownership of a valid copyright in those programs. *Latin Am. Music. Co., Inc.,* 705 F.3d at 38. Further, Defendants are contractually prohibited by section 5.2 of the 2001 ImageGear License from challenging Accusoft's copyrights. (Dkts. 182-1, p. 4; 182-2, p. 8; 182-3, p. 12) *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir. 1987). Defendants' argument that Accusoft must prove the contents of its copyright registrations is an attempt to circumvent their contractual prohibition from challenging Accusoft's copyrights.

However, even if Section 5.2 of the 2001 ImageGear Distribution License Agreement is not enforceable, Defendants cannot defeat the presumption of validity by merely "taking issue with the manner in which [plaintiff] filed its copyright." *Fonar Corp.*, 105 F.3d at 103-106 (defendant's attacks upon the copyright deposit submitted by plaintiff did not defeat the presumption of validity in the copyright plaintiff claimed to be infringed). Instead, Defendants must show that Accusoft defrauded or made a deliberate misrepresentation to the Copyright Office. "Absent a showing that [plaintiff] defrauded or made a deliberate misrepresentation to the Copyright Office, we think that a presumption of regularity and appropriateness in filing is ordinarily subsumed in the presumption of validity that attaches to a certificate of copyright registration. *Id.*, at 106.

The courts have found that even where registration applications and code deposits contain errors, those errors will not constitute sufficient evidence to rebut the presumption of validity unless the challenging party shows that the copyright owner *knowingly* made misrepresentations

to the Copyright Office. *See Data General Corp. v. Grumman Systems Support Corp.*, 825 F. Supp. 340, 357 (D. Mass. 1993) (*citing Eckes v. Card Prices Update*, 736 F.2d 859, 861-862 (2d Cir. 1984). *See also Gallup, Inc. v. Kenexa Corp.*, 149 Fed. Appx. 94, 96-97 (3rd Cir. 2005) ("Although we are troubled by the possibility that Gallup's misrepresentations may have been intentional, it is not clear that even knowing misrepresentations can void a copyright registration where the Register has not relied on them."). Defendants are thus required to show not merely errors in the ImageGear registration material but deliberate misrepresentation relied upon by the Copyright Office in order to shift the burden of proof of validity back to Plaintiff. Defendants have utterly failed to do so here. (MedPlus's Motion for Summary Judgment as to Liability and Damages Under the Copyright Act (Dkt. 412), pp. 5-9.)

Here, the ImageGear source code Accusoft produced to Defendants in discovery corresponds with enumerated versions of ImageGear that Accusoft registered with the Copyright Office. (Lubeck Decl., at ¶ 11.)   Defendants make allegations regarding Plaintiff's copyrights for ImageGear Versions 11 and 14.  (SOF ¶¶ 4-6, 10.)  Defendants do not contest any other copyrighted version of ImageGear.  (*Id.*, ¶¶ 7-9, 11.)  It was not until Christian Hicks' Rebuttal Report, dated April 25, 2014, that Accusoft was first made aware that Defendants were claiming that the produced ImageGear Version 11 source code did not match the deposit copy of ImageGear Version 11. (SOF Resp., ¶¶ 4-6; Lubeck Decl., at ¶ 4.)  It was also the first time that Accusoft was made aware that Defendants were claiming that the deposit copies for ImageGear Version 14 and Version 13 were identical.  (Id.)  Each allegation is easily explained and debunked. (Id.)

First, after reviewing the source code production, Accusoft determined that Version 12 of ImageGear had been produced instead of Version 11. (Lubeck Decl., at ¶ 4.)  On August 14,

2014, Accusoft supplemented its production with the correct ImageGear Version 11 source code. (SOF Resp., ¶¶ 4-6; Lubeck Decl., at ¶ 4.) The Version 11 source code produced on this date matched the deposit copy for ImageGear Version 11. *Id.* Counsel for Accusoft spoke with and wrote Defendants' counsel on September 5, 2014, confirming that the ImageGear Version 11 code was produced and that it matched the deposit copy. (*Id.*; Ciavarra Decl., at ¶¶ 2-4.)

Additionally, ImageGear Version 14 was built upon ImageGear Version 13. Thus it is unsurprising that its deposit copy contains some code from Version 13. Defendants' allegation that the copyright registration deposit material is identical for Versions 13 and 14 is wrong. There are numerous differences visible in the unredacted portions of the deposit copies.

There is nothing deficient about Accusoft's copyright registrations related to ImageGear.

        b. <u>Plaintiff did not "stymie" any discovery effort by Defendants.</u>

As shown above, Defendants' position regarding Accusoft's deposit material is misplaced. Nevertheless, Defendants' baseless assertions regarding Accusoft's discovery conduct warrant rebuttal.

Despite taking numerous depositions of Plaintiff's current and former employees, Defendants' *only* attempt discover "the underlying facts regarding the deposit material submitted to the Copyright Office" was by deposing Accusoft's law firm. Defendants scheduled a Rule 30(b)(6) disposition of Trusted Counsel, LLC, a law firm that represents Accusoft from time to time. Defendants claim that Accusoft's "representative" claimed privilege at this deposition. (Dkt. 412, p. 9; SOF, ¶¶ 12-13.) In reality, the deponent was John Monahon, Esq., a partner of Trusted Counsel, LLC. (SOF Resp., ¶ 13.) Mr. Monahan invoked privilege when Defendants' counsel asked for the factual basis for various statements in Accusoft's copyright filings. (*Id.*; Monahan Depo., 126:25-128:16, 158:13-159:18, and 185:9-186:6.) His invocation of privilege

was entirely proper. The only way Trusted Counsel could have become aware of the factual basis for *anything* in Accusoft's copyright filings was via communications with its client, Accusoft. "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). In *Upjohn*, the U.S. Supreme Court upheld the application of privilege to an IRS request for documents related to an internal investigation by Upjohn's corporate counsel. *Id.* *Upjohn* applies equally to the facts of this case. Defendants were free to question Accusoft's employees regarding the factual basis for Accusoft's copyright filings. Instead, Defendants sought to use a more convenient – and unquestionably privileged – method for obtaining this information. *Upjohn* does not permit this.

After the Trusted Counsel deposition, Defendants took numerous depositions of Accusoft's employees and failed in each one to ask a single question about Accusoft's copyright registrations. (SOF Resp., ¶¶ 12-13.)  On July 22, Defendants deposed Accusoft's corporate representative.  Jack Berlin, Accusoft's President, was deposed on July 23, and Russ Puskaric, a Vice President of Accusoft, was deposed on July 24.   Leif Peters, an Accusoft account representative, was deposed on August 20. Accusoft's Copyright filings were never mentioned in any of these depositions. (*Id.*) Despite Accusoft's proper attorney-client and work product objections at the Trusted Counsel deposition, Defendants never sought the testimony of Accusoft itself regarding the copyright filings. (*Id.*)

2.   **Defendants identified the versions of ImageGear object code which are "the same versions" as the source code produced.**

Defendants claim that because they only had access to Plaintiff's object code files, Plaintiff must prove that the object code files must correspond to the content of its copyrighted

source code deposit material for those versions. (Dkt. 412, § C(2), pp. 9-10). This is an inaccurate statement of the law.

The source code deposit material is merely an excerpt of the software program. It is the software program – not only the deposited material or only the source code – that is the protected work. *Data Gen. Corp.*, 803 F. Supp. at 490. Both the source code and the object code for ImageGear are protected under its copyrights. *Id.* Here, ImageGear versions are identified by numbers. (Lubeck Decl., at ¶ 3; SOF Resp., ¶ 5.) Defendants admit copying, incorporating and distributing the object code files for ImageGear versions 11,[2] 13, 14 and 16 within their products. (Dkt. 304, SOF (Dkt. 414), ¶¶ 33-37, 43, 72, 75; Dkt. 189, Second and Third Affirmative Defenses; Counterclaim, ¶¶ 3 and 10). The ImageGear source code Accusoft produced to Defendants in discovery corresponds with enumerated versions of ImageGear that Accusoft registered with the Copyright Office, (Lubeck Decl., at ¶ 11), and is the human-readable representation of the ImageGear object code identified by Defendants as incorporated within ChartMaxx, OptiMaxx and eMaxx. (*Id.*, ¶ 10.) Defendants do not point to any evidence to dispute that the ImageGear source code produced matches the ImageGear object code Defendants admit to copying, incorporating and distributing within ChartMaxx, OptiMaxx and eMaxx.

### 3.   Substantially similarity is a red herring.

Accusoft does not have to conduct a substantially similarity analysis, contrary to Defendants' claim in their motion. (Dkt. 412, § C, pp. 5 and 10.) Defendants mischaracterize copyright law and Plaintiff's expert's methodology.

"'Substantial similarity' is not an element of a claim of copyright infringement. Rather, it

---

[2] ImageGear Version 11 is also known as ImageGear 2001. (SOF Resp., ¶ 5; Lubeck Decl., at ¶ 3.)

is a doctrine that helps courts adjudicate whether copying of the 'constituent elements of the work that are original' actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) (emphasis in original). A showing of substantial similarity is irrelevant in a case like this one, in which the Defendants admitted direct copying of copyrighted works. *Id. see also Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir.1989) (noting that "[a] finding that a defendant copied a plaintiff's work, without application of a substantial similarity analysis" will be made "when the defendant has engaged in virtual duplication of a plaintiff's entire work").

Defendants have also completely mischaracterized Matthew Decker's analysis. Mr. Decker's examination of Defendants' files was in no way "limited to keyword searches for the words 'ImageGear' and 'Accusoft.'" (SOF Resp., ¶¶ 105-110; Decker Decl., at ¶¶ 4-19.) Mr. Decker examined all of the native format source code and executable files provided by Defendants to Accusoft. He utilized EnCase Forensic to not only perform keyword searches for the presence of Accusoft's ImageGear within Defendants' software, but he also conducted a Hash Value analysis, source code review, object code review, registry analysis, metadata analysis, and file recovery, as examples. (Decker Decl., at ¶ 19.) He performed a comprehensive and thorough analysis of the Defendants' software programs, and confirmed that Accusoft's ImageGear was copied in the Defendants' software. With the Defendants' admission that they copied multiple entire ImageGear versions into their software, a substantial similarity analysis by Mr. Decker was entirely unnecessary. *Data Gen. Corp., supra.*

Contrary to Defendants' argument in their motion, Plaintiff has never asserted that "the mere presence of the words 'ImageGear' and 'Accusoft' in Defendants' software programs"

renders those programs infringing. (Defendant's Motion for Summary Judgment as to Liability and Damages Under the Copyright Act, "Def. Copyright Motion" (Dkt. 412) pp. 10-11; SOF, ¶¶ 109-110; SOF Resp., ¶¶ 109-110.) Infringement of Accusoft's copyrights is proven by Defendants' own repeated admission that they copied multiple entire ImageGear versions into their software. (Dkt. 304; SOF, ¶¶ 33-37, 43, 72, 75; Dkt. 189, Second and Third Affirmative Defenses; Counterclaim, ¶¶ 3 and 10)

For all of the foregoing reasons, Defendants' Motion for Summary Judgment on all claims for copyright infringement should be denied.

**D.    Accusoft never granted MedPlus a written license to use ImageGear in OptiMaxx.**

Defendants claim that they had a license agreement that specifically authorized the incorporation and distribution of ImageGear in OptiMaxx. There is no license which gives Quest the right to distribute ImageGear nor is there any license that allows Defendants to incorporate and distribute ImageGear within OptiMaxx. This Court already determined that the 2001 ImageGear Distribution License did not give Defendants such a right. (Dkt. 53.) The Defendants argument also references a so-called "2003 license."

Accusoft more fully explains the interplay between the 2001 ImageGear Distribution License and the 2003 purchase documents in its Response to Defendant's Motion for Summary Judgment for Contract. It is important to note that nowhere within the 2003 purchase documents is OptiMaxx specifically mentioned. (Dkt. 182-2.) MedPlus' employee with knowledge of the 2003 purchase documents, Ray Mazza, testified that he did not negotiate for the inclusion of ImageGear within OptiMaxx. (SOF Resp., ¶ 62.) That is because MedPlus did not even consider incorporating ImageGear into OptiMaxx until 2005. (SOF Resp., ¶ 62; Chattopadhya Depo., 57:8-16; 58:4-6; 58:11-14.)

Moreover, Defendants' actions call in to question their claim that the 2003 purchase documents constitute a license. *Defendant's own purchase orders* demonstrate that this is not the case. Purchase orders issued by MedPlus establish that the 2001 ImageGear Distribution License Agreement was the master agreement between the parties. The face page of the 2001 ImageGear Distribution License Agreement references a base product of "ImageGear 2001 ActiveX Developer." (Dkt. 182-1, p. 2). MedPlus' own purchase orders for the 2003 and 2006 purchase documents both refer back to this same "ImageGear 2001 ActiveX Developer" product. (Dkt. 182-2, p. 4; Dkt. 182-3, p. 4). MedPlus' purchase orders manifest its understanding that all purchases of ImageGear made after 2001 were subject to and governed by the 2001 ImageGear Distribution License Agreement. MedPlus' argument ignores its own recognition, made at the time of the 2003 and 2006 ImageGear purchases, that the 2001 ImageGear Distribution License Agreement was the master agreement between Accusoft and MedPlus governing all subsequent purchases of ImageGear. Internal emails and documents acknowledge that there was no license for OptiMaxx. (SOF Resp., ¶¶ 62 and 82.)

Further, genuine issues of material fact preclude a finding that any 2003 license was executed between the parties. First, Mr. Mazza testified that he initialed the alleged 2003 agreement. (SOF, ¶ 55). Mazza testified that he did not have the authority to sign agreements. (SOF Resp., ¶ 54). Mazza could not recall if MedPlus' representative, Marla Kouche, signed the order form with the alleged handwriting on it. (*Id.*, ¶ 57). Mr. Frischling did not initial the handwritten changes, and did not consider them to be part of the 2003 purchase documents. (*Id.*) Discovery has not shown which version of the revised agreement was attached to the order form when it was countersigned by Mr. Frischling. (*Id.*, ¶ 59).

Finally, even assuming the 2003 purchase documents comprise an additional license between the parties, the Defendants violated its conditions. The 2003 purchase documents require that MedPlus provide Accusoft with two copies of each application built with ImageGear. (Dkt. 182-2, § 4.3). Further, the 2003 purchase documents provide for a non-transferrable license to distribute ImageGear. (Dkt. 182-2, §2.3). It is undisputed that in 2008 MedPlus transferred its entire OptiMaxx department to Quest, and Quest made distributions of ImageGear. (Dkt. 36-1, ¶¶ 6, 17). Each of these instances comprise a separate, material breach of the 2003 purchase documents for which Defendants should be held liable, assuming such a license exists.

**E.    Plaintiff owns all pre-2008 causes of action relating to ImageGear.**

Defendants claim Plaintiff does not own the pre-2008 causes of action related to ImageGear. (SOF, ¶¶ 16-19.) Defendants take no other issue with Plaintiff's claims of ownership of ImageGear. (Id.) This Court must apply and respect the holding of the First Circuit in *SAPC, Inc. v. Lotus Development Corp.*, 921 F.2d 360 (1st Cir. 1990). There, the First Circuit made clear that whether an asset purchase agreement transfers pre-existing causes of action for copyright infringement is an issue of contract interpretation, and the intent of the parties controls. *Id.*, at 363. The cases cited by Defendants on this issue are not controlling here because the First Circuit has ruled on this issue. *Jepson v. Deutsche Bank Nat. Trust Co.*, 969 F. Supp. 2d 202, 210 (D. Mass. 2013) ("Because this Court [is] an inferior court within the First Circuit, it must, of course, apply and respect the holdings of the appellate court.").

The *SAPC* court specifically declined to apply cases "for the proposition that the transfer of a copyright does not convey claims for infringement that accrued prior to the transfer unless such claims are explicitly referenced in the agreement." *Id.* Instead, the court sought to determine the intent of the parties to an asset purchase agreement in determining whether pre-merger causes

15

of action for copyright infringement were transferred with the copyrights. "The rule in the First Circuit is that in construing a written agreement, courts must consider every phrase and clause in light of all the others in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." *SAPC*, 921 F.2d at 363 (*citing Boston Edison Co. v. FERC*, 856 F.2d 361, 365 (1st Cir. 1988). Where contract language is unambiguous, agreements are to be interpreted according to their plain meaning. *See Warren Freedenfeld Assoc., Inc. v. McTigue, D.V.M.*, 531 F.3d 38, 49 (1st Cir. 2008) (*citing Eigerman v. Putnam Invs., Inc.*, 450 Mass. 281, 287, 877 N.E. 2d 1258, 1263 (Mass. 2007)).

The *SAPC* court found that an asset purchase agreement purporting to transfer "all right, title, and interest" in certain copyrights demonstrated the clear intent of the parties to also transfer the pre-existing causes of action. *Id.*, pp. 362-363. "[T]he clear intent of the parties [was] that [Plaintiff] was to acquire 'everything the seller has' in relation to" the software copyrights at issue. *Id.* The unambiguous intent of the parties to the 2008 purchase of Accusoft Delaware by PIC Acquisition II, Inc. (PIC), was to transfer all of Accusoft Delaware's interest in ImageGear to PIC, including pre-transfer causes of action. (*See also* Declaration of David Frischling Decl., at ¶ 3; SOF Resp., ¶¶ 16-19; Declaration of John Berlin "Berlin Decl." (Dkt. 28-1) ¶¶ 5-6.).

The court also emphasized that the party seeking to deviate from the terms of a broad and general conveyance has the burden of proving the asserted specific assertion. *Id.*, at 363. The defendant in *SAPC* argued that the reservation of certain identified assets to the seller resulted in the reservation of pre-existing causes of action for assets other than those on the reserved list. *Id.*, at 362-363. The defendant's argument failed. "All the proviso accomplished was to reserve to SAPC those assets not transferred in the prior paragraphs." *Id.*, at 363.

Defendants make the same argument here: that an unambiguous list of Excluded Assets reserved to the seller should be interpreted to include pre-2008 causes of action for the intellectual property that is expressly included in the asset purchase agreement. (Def. Copyright Motion, pp. 12-14; SOF, ¶¶ 16-19.)  Defendants' argument fails for the same reason it failed in *SAPC*. The Bill of Sale and Assignment of Contract Rights ("Bill of Sale"), read together with the Assignment of Copyrights, contains unambiguous language, identical to the language in *SAPC*, that makes clear the intent of the parties to transfer not only ownership of the copyrights but also all past and future causes of action thereunder. (SOF Resp., ¶¶ 16-19; Berlin Decl. (Dkt. 28-1) ¶¶ 5-6.)

Section 1(a) of the Bill of Sale utilizes the same "right, title and interest" language that the court in *SAPC* found sufficient to demonstrate an intent to transfer "everything the seller has" in regards to the copyrights, including pre-existing causes of action. (SOF Resp., ¶¶ 16-17; Bill of Sale and Assignment of Contract Rights (Dkt. 415-4) p. 1.) Further, Exhibit A to the Bill of Sale provides that the purchaser has "all rights and powers to assert defend and recover title to the Intellectual Property of the Purchased Assets (collectively, the "Intellectual Property")," along with seller's contract rights and "[a]ll claims against others, rights, and choses in action, liquidated or unliquidated from the suppliers or customers of the Purchased Assets." (Id., p. 6 "Ex. A: Purchased Assets, §§ 1, 8, and 13.) The Assignment of Copyrights, part of the Bill of Sale, provides that "all rights, title, and interest in the Copyrights" were transferred. (SOF Resp., ¶¶ 16-17; Assignment of Copyrights (Dkt. 415-4) p. 21; Frischling Decl., at ¶¶ 2-3.)  As in *SAPC,* the Bill of Sale and the Assignment of Copyrights make clear that the parties "intended a transfer of rights broader than just the copyrights alone." *SAPC, Inc.*, 921 F.2d at 363.  This

includes "all rights and powers to assert defend and recover title to the Intellectual Property of the Purchased Assets." (SOF Resp., ¶¶ 16-17; Frischling Decl., at ¶ 3.)

There is no question that, between the parties to the 2008 Accusoft Delaware sale, all "rights, title, and interest" in ImageGear – including pre-existing causes of action – were intended to be transferred to PIC. *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F. Supp. 2d 1, 12-13 (D. Mass. 2002) *aff'd on other grounds*, 322 F.3d 26 (1st Cir. 2003). (*See also* Berlin Decl. (Dkt. 28-1) ¶¶ 5-6; Frischling Decl., at ¶ 3.)

The Court should deny Defendants' claim for partial summary judgment as to any alleged acts of infringement which occurred prior to December 1, 2008.

## F.  Defendants' interpretation of the Copyright Statute of Limitations is incorrect.

Defendants claim that the Copyright Act, at 17 USC § 507(b), limits recovery of monetary relief going back three years from the date the Complaint is filed. They are wrong. A Plaintiff may reach damages outside of § 507(b)'s three-year window as long as the entitlement to damages accrued within the three-year window. In the First Circuit, a claim for infringement accrues when a plaintiff "knows or has reason to know of the act which is the basis for the claim." *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 88 (1st Cir. 2007).[3]

"§ 507(b) permits damages occurring outside of the three-year window, so long as the copyright owner did not discover – and reasonably could not have discovered – the infringement before the commencement of the three year limitation period." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706, (9th Cir. 2004). So long as a Plaintiff discovers the infringement within three years of filing suit, it may recover damages for infringement outside of

---

[3] *Cambridge Literary Properties* was a case involving the application of the accrual rule to a statute of limitations defense. It is unclear why Defendants cite this case in support of their position, as it did not involve a situation where a Plaintiff was seeking damages beyond the three year limitations period but sued within three years of the violation's discovery. The case does, however, set forth the accrual rule succinctly.

the § 507(b) three-year window. *Id.* The Supreme Court recently noted that the overwhelming majority of courts of appeals use discovery accrual in copyright cases. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 n. 4 (2014).

> The bright-line three year rule proposed by Defendants

> "would distort the tenor of the statute. Section 507(b), like all statutes of limitations, is primarily intended to promote the timely prosecution of grievances and discourage needless delay. It makes little sense, then, to bar damages recovery by copyright holders who have no knowledge of the infringement, particularly in a case like this one, in which much of the infringing material is in the control of the defendant." *Polar Bear,* 384 F.3d at 706-707.

The "critical question," according to the *Polar Bear* court, is when the Plaintiff discovered the infringement. *Id.*, at 707. The court in *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F. Supp. 2d 1, 26 (D. Mass. 2002) *aff'd on other grounds*, 322 F.3d 26 (1st Cir. 2003) found that the plaintiff could recover for a 1995 infringement in a suit filed in May of 2000 if the jury agreed that he did not know of the infringement until August of 1997.

In *Torres-Negron v. Rivera*, CIV. 02-1728 (HL), 2005 WL 1308675 (D.P.R. 2005) *on reconsideration in part*, 413 F. Supp. 2d 84 (D.P.R. 2006), the plaintiff sued in 2002 for copyright infringement of song lyrics written in 1993. *Id.* at *6. The defendants moved to dismiss on statute of limitations grounds, arguing that more than three years had passed from the infringement to the time suit was brought. *Id.* The plaintiff averred that he did not learn of the infringement until shortly before filing suit in 2002. *Id.* The court, citing *Polar Bear*, found that the plaintiff could recover for an infringement occurring outside of *§ 507(b)*'s three year window if he learned of the infringement within that time. *Id.*

Defendants' reliance on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) is misplaced. In that case the Plaintiff notified MGM in 1998 that she claimed ownership of the copyright of a 1963 screenplay that the 1980 film *Raging Bull* was based upon, and asserted that

MGM was not entitled to exploit the derivative film. *Id.*, at 1970-71. After filing suit in January of 2009, the Plaintiff limited her requested to relief to recover for acts occurring before January of 2006. *Id.*, p. 1971. Accordingly, *Petrella* is distinguishable from *Torres-Negron* and *Danielson*, as the Plaintiff there did not file suit for damages reaching back beyond the three year limitation period after discovering the violation and filing suit within the limitation period. The Court recognized that the discovery rule and its implications were not at issue, and the Court did not pass on questions related to the same. *Id. at* 1969 n. 4.

Accepting the Defendants' incorrect interpretation of *17 USC § 507(b)* would be a windfall to Defendants who successfully conceal their infringing activities for a period sufficient to escape the three-year window Defendants propose. This is inequitable, and as the *Polar Bear* court recognized, would distort § 507(b). Here, the Plaintiff's claim did not accrue until within three years of the date suit was filed, even though some of the infringing activity occurred long before the claim accrued. (SOF Resp., ¶¶ 68, n. 7.) Recovery of damages beyond the three year limitations period is entirely proper under *Polar Bear* and established precedent in the First Circuit Plaintiff did not and could not have learned of Defendants' infringing conduct until well within three years of the filing date, November 14, 2011. As the Plaintiff timely filed suit after its copyright infringement claim accrued, Plaintiff is permitted to obtain damages for the Defendants' entire violation.

The Court should deny Defendants' claim for partial summary judgment as to any alleged acts of infringement which occurred prior to December 1, 2008.[4]

---

[4] Furthermore, Mr. Green's damages calculations were broken down by year from 2001 through 2012 in his analysis ChartMaxx-based damages. (Dkt. 391, Ex. 3, Ex. H, H-1, H-2, and H-3.) His damages calculations were broken down by year from 2005 through 2012 in his analysis of OptiMaxx-based damages. (Id., Ex. 3, Ex. I, I-1, I-2, I-3, I-4, and I-5.) His damages calculations were broken down by year from 2001 through 2012 in his analysis of eMaxx-based damages. (Id., Ex. 3, Ex. J and J-1.) (See also Green's report and deposition testimony for additional analysis conducted by Mr. Green.)

**G.      Defendants' conclusory assertion as to the reliability of Accusoft's damages expert's calculations do not constitute a basis for summary judgment.**

Section G of Defendants' Motion contains only a conclusory statement that they intend to file a Motion in Limine to Exclude Mr. Green's Testimony. (Def. Copyright Motion, p. 15-16.) It addresses no material facts, record evidence, or matters of law. To the extent that Defendants attempt to make an as-yet-filed Motion in Limine the basis for their summary judgment motions, they should be denied as untimely. This Court ordered that Motions for Summary Judgment be filed on or before September 5, 2014. (Dkt. 398.) Thus, the Court should ignore this Section in its entirety.

**H.      Plaintiff is entitled to recover statutory damages, if elected, and attorney's fees.**

Defendants cite no evidence for the date that infringement "commenced" as that date is defined in 17 USC § 412. They claim it is "undisputed that all of the alleged acts of infringement… took place before the effective date of Accusoft's purported copyright registrations" but provide no citation to their Statement of Facts or any other document in support of this contention. (Def. Copyright Motion (Dkt. 412) pp. 16-17.) Without a date for the commencement of infringement, the Court is unable to assess whether § 412 is applicable.

Defendants cite only some of Accusoft's ImageGear copyright registrations, and ignore that later versions of ImageGear are derivative of underlying works in which Accusoft also held copyrights. (SOF Resp., ¶ 10; Lubeck Decl., at ¶ 6; Copyright Registrations (Dkt. 182-4)). A chart of Accusoft's ImageGear registrations, their effective date of registration, and the underlying works to which they refer **is attached hereto as Exhibit "A."**

Accusoft's 2010 ImageGear copyrights all cite TX5645136 as a previous version of the registered ImageGear version. (**Exhibit "A"**; Copyright Registrations (Dkt. 182-4).) That version was registered in 2002. *Id.* Further, TX5645136 cites TX4-311-850 as a prior version,

which was registered in 1996. *Id.* Accusoft's 2010 registrations make clear that each version is derivative of a prior version of ImageGear, going back to 1996. The parties' relationship began in 2001.  (SOF Resp., ¶ 1; SOF, ¶ 1.)  It is therefore undisputed that all acts of infringement in this case arose after the publication date for the original, underlying version of ImageGear in 1996.

For example, and one relevant to Accusoft's Motion for Summary Judgment for its Copyright claims, Defendants admitted that ImageGear Version 14 was incorporated into OptiMaxx in 2005. (SOF, ¶ 72.)  Infringement of ImageGear Version 14 constitutes infringement of the underlying copyrighted versions of ImageGear as well. *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1112 (1st Cir. 1993) (noting that the copyright in a derivative work only protects the elements original to the derivative work, that any elements of the derivative work from the underlying work remain protected by the copyrights in the underlying work, and holding that *copying of the derivative work infringed the underlying work*). It is irrelevant that what was actually distributed by Defendants was the derivative and not the underlying work. *Id.,* (citing *Nimmer* § 3.05, at 3–31; *G. Ricordi & Co. v. Paramount Pictures, Inc.,* 189 F.2d 469 (2d Cir.), *cert. denied,* 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951) (performance of play in which copyright registration had expired constituted infringement of the registered copyright in the underlying story from which play was derived); *Grove Press, Inc. v. Greenleaf Publishing Co.,* 247 F.Supp. 518 (E.D. N.Y. 1965) (copying of unregistered English language translation of French language novel infringed upon the registered copyright in the underlying French language story)).

By infringing ImageGear Version 14, Defendants also infringed the underlying work registered in 2002 and noting the original ImageGear registration from 1996 as its underlying

work. As Defendants admit that ImageGear version 14 was incorporated into OptiMaxx in 2005, it is undisputed that infringement commenced after the registrations of ImageGear Professional Edition and ImageGear, making attorney's fees and statutory damages available to Accusoft for infringement of those registrations. (*See* § 5.2 of the 2001 ImageGear Distribution License Agreement, (Dkt. 182-1), p. 4; 182-2, p. 8; 182-3, p. 12); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir. 1987). With valid underlying registrations dating as far back as 1996, Accusoft is plainly entitled to statutory damages, should it so elect, and attorney's fees for infringement of those underlying registrations.

### III. CONCLUSION

Each of Defendants' claimed grounds for summary judgment fails. Plaintiff has established the elements of a prima facie case for copyright infringement: (1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original. Accusoft has presented its copyright registrations, and Defendants are contractually prevented from challenging the validity of Accusoft's copyrights. With both elements met, Accusoft is entitled to summary judgment.

None of Defendants' excuses hold water. The 2003 ImageGear purchase documents do not provide for a written license to incorporate ImageGear into OptiMaxx. Accusoft owns all pre-2008 causes of action relating to ImageGear. Defendants also incorrectly interpret the Copyright Act, thus Accusoft is entitled to statutory damages, should it so elect, and attorney's fees as a result of Defendants' infringement.

WHEREFORE, Plaintiff, ACCUSOFT CORPORATION, requests entry of an order denying Defendants, QUEST DIAGNOSTICS, INC. and MEDPLUS, INC.'s, Motion for Summary Judgment as to Liability and Damages under the Copyright Act (Dkt. 412), granting

Plaintiff's Motion for Partial Summary Judgment for Copyright Infringement against Defendants (Dkt. 417), and for such other further relief as the Court deems just and necessary.

**ACCUSOFT CORPORATION**
By its attorneys,

**/s/ David D. Ferrentino**

David D. Ferrentino *(pro hac vice)*
Patrick A. Traber *(pro hac vice)*
Tabatha A. Liebert *(pro hac vice)*
ALLEN DELL, P.A.
202 South Rome Avenue
Suite 100
Tampa, FL 33606
Telephone: (813) 223-5351
Facsimile: (813) 229-6682
Email: dferrentino@allendell.com
Email: ptraber@allendell.com
Email: kdees@allendell.com

Louis M. Ciavarra (BBO # 546481)
Lynette Paczkowski (BBO # 660747)
BOWDITCH & DEWEY, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Telephone: (508) 926-3408
Facsimile: (508) 929-3011
Email: lciavarra@bowditch.com
Email: lpaczkowski@bowditch.com

Dated: October 17, 2014

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 17, 2014.

**/s/ David D. Ferrentino**
David D. Ferrentino *(pro hac vice)*